UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GENE WRIGHT JR., | ) | |
| an individual, | ) | Case No: |
| | ) | |
| Plaintiff, | ) | Judge: |
| | ) | |
| v. | ) | Magistrate Judge: |
| | ) | |
| BOARD OF COMMISSIONERS OF | ) | |
| THE CAPITAL AREA TRANSIT | ) | |
| SYSTEM; and THE CITY /PARISH | ) | |
| OF EAST BATON ROUGE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiff, GENE WRIGHT JR., an individual, by and through his undersigned counsel, hereby files this Complaint and sues BOARD OF COMMISSIONERS OF THE CAPITAL AREA TRANSIT SYSTEM (hereinafter "CATS") and CITY / PARISH OF EAST BATON ROUGE (hereinafter the "CITY/PARISH") for injunctive and declaratory relief, damages, and attorneys' fees and costs pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*. ("Americans with Disabilities Act" or "ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*. ("Rehabilitation Act" or "RA") and states as follows:

## BACKGROUND

1. The CITY/PARISH has stated on its website that it has a goal for citizens with disabilities to have access and be included in the City's community life.[1]

---

[1] *See* Americans with Disabilities Task Force, City of Baton Rouge, found at https://www.brla.gov/650/Americans-With-Disabilities-ADA-Task-For (last accessed September 24, 2020).

1

2.      Similarly, in its 2019 Reasonable Accommodation Policy, CATS states that it is "committed to providing equal access and opportunity to qualified individuals with disabilities in all programs, services, and activities."[2]

3.      Nonetheless, nearly thirty (30) years after the passage of the Americans with Disabilities Act, Defendants continue to provide inadequate transportation services for individuals with mobility-related disabilities. CATS and the CITY/PARISH (hereinafter collectively referred to as "Defendants") are violating the ADA by failing to provide accessible bus stops.

4.      In December 2018, the CITY/PARISH published a survey that used 3D technology to find physical barriers that are ADA violations, such as ramps, clearances, passing spaces, handrails, curb cuts, and pavement markings. This survey found at least 7,255 barriers within the city limits.[3]

5.      In late February 2019, CATS instituted a complete overhaul of its bus route system. In a February 2019 interview, CEO of CATS Bill Deville characterized the BR Bus Stops as "an eyesore" but noted that CATS was working to correct that problem.

6.      On November 7, 2019, East Baton Rouge Mayor-President Sharon Weston Broome and CATS announced the receipt of a $15 million discretionary grant for the Plank Road to Nicholson Drive Bus Rapid Transit project. One of the stated goals of the project was to provide ADA compliance.

---

[2] *See* CATS Reasonable Modification Policy, found at
https://www.brcats.com/assets/docs/ADA/ReasonableModificationPolicy_2019.pdf (last accessed September 24, 2020).
[3] Steven J. Lumpkin, *ADA Self Evaluation Plan for Public Rights of Way* (Dec. 18, 2018) found at https://www.brla.gov/DocumentCenter/View/6456/ADA-Public-Outreach-12-18-18-PDF (last accessed September 24, 2020).

7.      However, as will be alleged in greater detail below, Defendants have and continue to violate the ADA by failing to provide bus stops which are accessible to persons with mobility-related disabilities.

8.      When viewed in its entirety, Defendants' bus system is inaccessible to persons with a mobility-related disability.

9.      Upon information and belief, the CITY/PARISH owns the physical bus stops throughout the Baton Rouge (hereinafter referred to as "the Property" or "bus stops").

10.     Upon information and belief, Defendants jointly operate and are responsible for the bus stops.

11.     Defendants have failed to bring the bus stops into compliance with the requirements of the ADA and are discriminating against persons with mobility-related disabilities, including Mr. Wright.

12.     As will be alleged in further detail below, Defendants have actual knowledge of their obligations under the ADA. Despite actual knowledge of their obligations under the ADA, Defendants are nonetheless constructing the bus stops in a non-accessible manner and/or are failing to bring their non-compliant bus stops into compliance with the requirements of the ADA.

13.     As a result of Defendants' ongoing failure to comply with their obligations to construct bus stops in an accessible manner and/or bring the bus stops into compliance with the requirements of the ADA, Mr. Wright has and continues to experience discrimination under Title II of the ADA and the Rehabilitation Act of 1973.

**JURISDICTION AND PARTIES**

14.     This is an action for declaratory and injunctive relief pursuant to Title II of the Americans

with Disabilities Act, 42 U.S.C. §12131 *et seq.*, (see also 28 U.S.C. § 2201 and § 2202), and for Plaintiff's claims arising from 29 U.S.C. §794 *et seq.* (Rehabilitation Act).  This Court is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 and 1343.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendants' Property, which is the subject of this action, is located in East Baton Rouge Parish, Louisiana.

16.     Mr. Wright is a resident of the State of Louisiana, East Baton Rouge Parish.

17.     Mr. Wright is a qualified individual with a disability under the ADA. Mr. Wright has paraplegia because of a spinal cord injury. He is also missing his right leg at the knee.

18.     Due to his disability, Mr. Wright is substantially impaired in several major life activities and requires a wheelchair for mobility. Specifically, Mr. Wright is unable to walk, stand, or use his legs without assistance.

19.     Upon information and belief, the CITY/PARISH is a political entity that owns a pedestrian right of way program in the form of an extensive network of sidewalks, curb ramps, crosswalks, bus stops, and other pedestrian paths of travel throughout the City of Baton Rouge. The CITY/PARISH is responsible for construction, maintaining, repairing, and regulating this system of pedestrian rights of way.[4]

20.     Upon information and belief, defendant CATS is the political entity, independent from the CITY/PARISH, which is responsible for the administering, operating, constructing, and maintaining the physical bus stops in Baton Rouge.

---

[4] *Brantley v. City of Baton Rouge*, 98 So.2d 824, 828 (La. 1 Cir. App. 1958) (finding that the Parish of East Baton Rouge has "exclusive authority to deal with the sidewalks is in the parish of East Baton Rouge").

21.     Upon information and belief, Defendants are public entities, subject to the ADA, and are responsible for the bus stops and transportation system which forms the basis of this suit.

22.     Upon information and belief, Defendants develop and provide the services and programs offered by and at the Property.

23.     Defendants are jointly responsible for complying with the obligations of the ADA.

24.     All events giving rise to this lawsuit occurred in the East Baton Rouge Parish, Middle District of Louisiana.

**FACTS**

25.     Mr. Wright realleges and reavers paragraphs 1-24 as if they were expressly restated herein.

26.     Pedestrian travel is a vital public service comprised of a network of sidewalks, bus stops, and curb cuts (the term for a ramp at the end of a sidewalk). Through this system, any individual – no matter their economic status – can leave their home or residence and safely reach a destination in this city.

27.     Defendants have spent tens of millions of dollars constructing an extensive pedestrian transportation system for the residents and visitors of Baton Rouge. The intent and purpose of this system is to provide a means for pedestrians to school or work, get food, visit family, attend doctor appointments, and participate in their community.

28.     For individuals without disabilities, navigating the sidewalks, bus stops, and curb cuts in Baton Rouge as a pedestrian is an easy task. Broken sidewalks are not an impediment to pedestrian travel for non-disabled pedestrians.

29.     Perhaps due to the perceived unimportance of having accessible bus stops in Baton Rouge, many of the bus stops have barriers to access as discussed herein.

5

30.    Defendants' end-to-end pedestrian system is not accessible to Mr. Wright because Defendants' system has countless impermissible barriers to access. The day-to-day activities of Mr. Wright are regularly impeded by the physical barriers. As is set forth in detail below, the barriers include but are not limited to: (1) non-existent bus landing pads, (2) cracked, broken, uneven, and excessively steep bus stop landing pads, and (3) lack of accessible routes to bus stop landing pads.

31.    Due to Defendants' refusal to make their pedestrian system accessible, persons with mobility-related disabilities are prevented from participating in the end-to-end pedestrian system.

*Baton Rouge's Systemic Lack of Accessibility Causes Death for Pedestrians*

32.    In 2018, the CITY/PARISH conducted a survey (hereinafter "2019 ADA Evaluation") using 3D technology to find physical barriers that are ADA violations, such as ramps, clearances, passing spaces, hand rails, curb cuts, and pavement markings. This survey found 8,651 barriers within the city limits.[5]

33.    The 2019 ADA Evaluation divided the City into 12 zones and not only counted the amount of barrier but rated their severity. Zone 8 which covers Spanish Town, Downtown, and Beauregard Town had the most barriers at 1,449 and also the most severe barriers with 332 barriers having the highest severity rating.[6]

34.    All these 8,651 barriers, <u>violate</u> the ADA requirements.[7] See Figure 1 for how the survey identified how a barrier is non-compliant.[8]

---

[5] See Exhibit A, an excerpt from Dep't of Transp. & Drainage, City of Baton Rouge and Parish of East Baton Rouge, *2019 ADA Self-Evaluation and Transition Plan,* at 9.
[6] *Id*.
[7] *Id*.
[8] *Id.* at 6.

35.    In an article published January 11, 2017, the Advocate reported that Baton Rouge ranked as the 19th worst metropolitan area for pedestrian safety.[9]

36.    Jessica Kemp, vice president of policy and advocacy for CPEX, a Baton Rouge-based urban planning nonprofit, stated, "We have serious problems. I don't think that there's a widely shared understanding of the risk to pedestrians in Louisiana. These are preventable deaths, by and large."[10]

37.    Another article, published on February 13, 2019, reported that Baton Rouge ranked 12th among the 20th deadliest cities for pedestrians in the United States.[11]

38.    Between 2008-2017, Baton Rouge had 182 pedestrian fatalities and an average of 2.21 for every 100,000 people. Louisiana's total count of pedestrian fatalities was 1,047, an average of 2.25 for every 100,000 residents.[12]

39.    Camille Manning-Broome, director of the Center for Planning Excellence stated, "Our streets have been designed with the car in mind and at a larger scale and at fast speed. This should be a wake-up call for our city and state to say, we need to be designing for safety and for people and not just for moving our cars."[13]

---

[9] Grace Toohey and Andrea Gallo, *Baton Rouge and Louisiana Rank Among Worst for Pedestrian Safety: "We Have Serious Problems"*, THE ADVOCATE (Jan. 11, 2017) found at https://www.theadvocate.com/baton_rouge/news/article_bbb25016-d851-11e6-bd40-3fa8ee0c1fac.html (last visited September 24, 2020).

[10] *Id.*

[11] Stephanie Riegel, *Riegal: Why We Remain So Unfriendly to Pedestrians*, BUSINESS REPORT (Feb. 13, 2019) found at https://www.businessreport.com/opinions/riegel-baton-rouge-pedestrians-unfriendly#close-olyticsmodal (last visited September 24, 2020).

[12] *Id.*

[13] *Id.*

40.    While Baton Rouge may have formally adopted different plans to address this issue and passed ordinances, "the rules aren't really being enforced."[14]

**COUNT I**
**VIOLATION OF TITLE II OF THE ADA**

41.    Mr. Wright realleges and reavers paragraphs 1-40 as if they were expressly restated herein.

42.    Upon information and belief, Defendants are public entities, subject to the ADA, and are responsible for the bus stops and transportation system which form the basis of this suit.

43.    Upon information and belief, Defendants develop and provide the services and programs offered by and at the bus stops.

44.    Upon information and belief, while the CITY/PARISH has outsourced some or all of the maintenance, upkeep, repair, and/or alternation and new construction of the bus stops to CATS, the CITY/PARISH is still liable to Mr. Wright by selecting and/or providing bus stops which are inaccessible. Further, the CITY/PARISH is liable to Mr. Wright for its failure to take the necessary steps to select bus stops which are accessible and to ensure that CATS complies with the requirements of Federal Law.

45.    Upon information and belief, Mr. Wright has used the fixed route public transportation system offered by Defendants, including the buses and bus stops.

46.    Upon information and belief, Mr. Wright is currently deterred from using the fixed route public transportation system offered by Defendants because the bus stops are inaccessible. Instead, Mr. Wright is forced to rely upon paratransit to travel because of the inaccessible bus stops.

47.    In order to use the paratransit service, Mr. Wright must make a reservation for transportation twenty four (24) hours in advance. Often times, reservations require more than

---

[14] *Id.*

twenty four (24) hours. If accessible landing pads existed near his home, Mr. Wright would have the option to use the bus on a moment's notice. At this point, he cannot meet up with friends or family on a "spur of the moment" basis like able-bodied citizens of Baton Rouge can.

48.     Mr. Wright intends on using the bus stops for travel and transportation purposes once said system is made meaningfully accessible and usable.

49.     Importantly, the bus stops immediately near Mr. Wright's home lack landing pads and accessible routes to access the bus stops. Those bus stops merely consist of poles stuck in the dirt. The complete inaccessibility of these bus stops serves as a "threshold barrier" which actively and continuously deters Mr. Wright from attempting to utilize the overall bus stop system.

50.     Mr. Wright cannot meaningfully utilize the bus stop system because the bus stops near his home are inaccessible. Each time Mr. Wright would attempt to embark or disembark from his home using the inaccessible bus stops, he would be placing himself in physical danger because he would have to navigate his wheelchair into the street or try to traverse over uneven grass in order to enter and exit the bus.

51.     Mr. Wright has used the Baton Rouge bus system and will continue to use the bus system for the foreseeable future. Mr. Wright seeks equal access to the Baton Rouge bus system, of which accessible bus-stops is an integral component.

52.     While using the bus system, Mr. Wright has tried to access numerous bus stops but has encountered numerous barriers which hindered his ability to access the services and utilize the programs offered at the bus stops.

53.     Mr. Wright tried to use the architectural features offered at bus stops but has experienced great difficulty as a result of the noncompliant features, including lack of accessible routes to the

bus stops and inadequate or non-existent landing pads at the bus stops.

54.    On numerous occasions, Mr. Wright has faced difficulty entering or disembarking from buses as a result of the lack of level landing pads at the bus stops.

55.    On numerous occasions, Mr. Wright has faced difficulty traversing to bus stops because there are no accessible routes to the bus stops.

56.    On many occasions, as a result of a lack of a level landing pad at bus stops, Mr. Wright risks tipping out of his wheelchair while entering or disembarking from a bus or getting to and from the bus stops which are not accessible.

57.    Frustrated with the barriers he was encountering on a regular basis at Defendants' Property, Mr. Wright completed an ADA Complaint Form on the CATS website on July 13, 2020, wherein he stated:

> There are no landing pads at the bus stops in/along Greenwell Street which are the closes [sic] bus stops to my home. I am a wheelchair user and I therefore cannot use the City buses. Please add landing pads with accessible routes to bus stops.

58.    As of the time of filing, Mr. Wright has not received a response from CATS regarding his request for reasonable accommodation.

59.    By failing to respond to Mr. Wright's request for accommodation, CATS has constructively denied Mr. Wright's request for accommodation.

60.    On August 25, 2020, undersigned attorney Andrew Bizer sent a Request for Reasonable Accommodation via U.S. mail to the CITY/PARISH, wherein he stated:

> I write on behalf of Gene Wright, a wheelchair user who lives at 5659 Nashville Avenue in Baton Rouge. Mr. Wright is paraplegic. All of the bus stops on Greenwell Street near his home do not have landing pads. Because Mr. Wright is a wheelchair user, he cannot access the city busses because

he would be forced to roll in the grass near the street, which is unsafe in a wheelchair.

As a reasonable accommodation, Mr. Wright requests that the City/Parish take the following steps:

- Install ADA compliant landing pads along Greenwell Street within thirty days.

- Develop a comprehensive plan for the installation of ADA complaint landing pads throughout the City/Parish of East Baton Rouge.

- Allocate necessary funding for the installation of said modifications.

- Engage in a good-faith, interactive dialogue with undersigned concerning Mr. Wright's request for reasonable accommodation.

    Please let us know your plan for installing ADA compliant landing pads on or before September 15, 2020. I look forward to receiving your response.

61.    On September 25, 2020, Andrew Bizer received a response to the request for accommodation from CITY/PARISH. Rather than addressing Mr. Wright's request, a representative of the CITY/PARISH stated that Mr. Wright had submitted a complaint to CATS and instructed Mr. Bizer to contact CATS for further information about the request.

62.    By failing to meaningfully respond to Mr. Wright's request for reasonable accommodation, the CITY/PARISH constructively denied said request for accommodation.

63.    Mr. Wright plans to return to the Property in the near future to utilize the programs and activities administered at the Property.

64.    Mr. Wright continues to desire to use the Baton Rouge bus system but fears that he will experience serious difficulty or physical harm due to the barriers discussed in paragraph 68 which still exist.

65.    The barriers discussed below are excluding Mr. Wright from the programs and activities offered the Property.

66.    Mr. Wright plans to and will visit the Property in the future as a patron and visitor and to determine if the barriers to access alleged herein have been modified.

67.    Upon information and belief, Defendants have discriminated, and are continuing to discriminate, against Mr. Wright in violation of the ADA by excluding and/or denying Mr. Wright the benefits of its services, programs, and/or activities by failing to, *inter alia*, have accessible facilities within five (5) years of January 26, 1992. Mr. Wright's visits to the Property shows that the program, when viewed in its entirety, is not accessible.

68.    Upon information and belief, Defendants have intentionally discriminated against Mr. Wright because they are deliberately indifferent to the strong likelihood that a violation of Mr. Wright's federally protected rights will result from its policy of requiring Mr. Wright to enter and exit the bus from driveways and/or roadways rather than installing landing pads at their bus stops. *See, e.g. Loeffler v. Staten Island Univ. Hosp.,* 582 F.3d 268, 275 (2d Cir. 2009).

69.    Defendants have failed to provide program Access at the bus stops:

    A.    <u>Failure to Construct and Alter Bus Stops in an Accessible Condition</u>:

        I.    Pursuant to the Department of Transportation Regulations published for the ADA: "(a)(1) When a public entity alters an existing facility or a part of an existing facility used in providing designated public transportation services in a way that affects or could affect the usability of the facility or part of the facility, the entity shall make the alterations (or ensure that the alterations are made) in such a manner, to the maximum extent feasible, that the altered

12

portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, upon the completion of such alterations." 49 C.F.R. §37.43.

II.    Pursuant to Section 206.2.2 of the 2006 Americans with Disabilities Act (ADA) Standards for Transportation Facilities, Adopted by the U.S. Department of Transportation[15]: "Within a Site. At least one accessible route shall connect accessible buildings, accessible facilities, accessible elements, and accessible spaces that are on the same site."

III.    Pursuant to the 2006 ADAAG, Section 810.2.1: "Surface. Bus stop boarding and alighting areas shall have a firm, stable surface."

IV.    Pursuant to the 2006 ADAAG, Section 810.2.2: "Dimensions. Bus stop boarding and alighting areas shall provide a clear length of 96 inches (2440 mm) minimum, measured perpendicular to the curb or vehicle roadway edge, and a clear width of 60 inches (1525 mm) minimum, measured parallel to the vehicle roadway."

---

[15]    Hereinafter referred to as "2006 ADAAG." These standards are accessible at: http://www.access-board.gov/attachments/article/1498/ADAdotstandards.pdf (last accessed on September 24, 2020).



V.    Pursuant to 2006 ADAAG, Section 810.3, bus shelters and accessible elements shall be connected to the level boarding and alighting area by an accessible route:



VI.    Despite these obligations, Defendants have and continue to modify their bus stops in a non-accessible condition.

VII.    Mr. Wright has encountered many bus stops that lack landing pads, an

accessible route, and contain other barriers to accessibility, including but not limited to the following locations:

    a.  Multiple bus stops along Greenwell Street lack landing pads and are located on uneven grass; and

    b.  The bus stop closest to the Movie Tavern Citiplace does not have a landing pad, requiring Mr. Wright to load and unload on uneven grass.

VIII.  Defendants' failure to construct bus stops in an accessible manner, as set forth above, constitutes an ongoing, unlawful policy or practice of failing to construct bus stops in an accessible manner. Consequently, Mr. Wright demands an injunction ordering Defendants to stop constructing/altering bus stops in an inaccessible manner. Mr. Wright also demands a complete inspection of all newly constructed or altered bus stops in the City of Baton Rouge.

B.    <u>Failure to Provide Program Access at the Existing Bus Stops</u>:

I.  There are numerous bus stops throughout the City of Baton Rouge which are entirely lacking a landing pad, as is set forth in 2006 ADAAG 810.2.1 and 810.2.2. As a result of the lack of a landing pad, Mr. Wright has encountered numerous difficulties embarking and alighting from bus stops. The lack of a level landing pad is dangerous for individuals in wheelchairs.

II.  On the whole, Defendants have failed to take steps to provide program access at their bus stops so that, when viewed in its entirety, the existing bus stops in the City of Baton Rouge are accessible to and usable by individuals with disabilities.

III.     According to the 2019 ADA Evaluation, 64 bus stops surveyed were non-compliant, by lacking an accessible route, lacking detectible warnings, and/or lacking a clear space of 24" x 36" at the shelter.[16]

IV.     When viewed in its entirety, the designated public transportation program operated by Defendants is not readily accessible to and usable by disabled patrons as a result of the numerous inaccessible bus stops which make travel for disabled patrons difficult and dangerous.

70.     42 U.S.C. § 12133 provides: "[t]he remedies, procedures, and rights set forth in section 794 of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."

71.     Defendants have discriminated against Mr. Wright by denying him full access to the services, programs, and/or activities by failing to make its facilities readily accessible as required by U.S.C. §12132 and its implementing regulations 49 C.F.R. Part 37.1-37.215 *et. seq.*

72.     Defendants have discriminated, and are continuing to discriminate, against Mr. Wright in violation of the ADA by excluding and/or denying Mr. Wright the full and equal benefits of their services, programs, and/or activities by failing to, inter alia, have accessible facilities. Mr. Wright personally experienced the numerous barriers to access on the Property discussed herein.

73.     Defendants have violated the ADA by providing their services, programs, and/or activities at an inaccessible facility. In determining the site or location of a facility, Defendants have made site selections that have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination.

---

[16] Exhibit A, Appendix B.

16

74.     Defendants discriminated against Mr. Wright by excluding him from participation in, and denying the benefits of, the services, programs, and/or activities at their Property because of Mr. Wright's disability, all in violation of 42 U.S.C. § 12132.

75.     Upon information and belief, Defendants continue to discriminate against Mr. Wright by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, programs, activities, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to make such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, programs, and/or activities, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

76.     Upon information and belief, Mr. Wright has been denied access to, and has been denied the benefits of services, programs and/or activities of Defendants' Property, and has otherwise been discriminated against and damaged by Defendants because of Defendants' discrimination, as set forth above. Mr. Wright will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. Furthermore, as required by the ADA and other remedial civil rights legislation, to properly remedy Defendants' discriminatory violations and avoid piecemeal litigation, Mr. Wright requires a full inspection of Defendants' Property in order to catalogue and cure all the areas of non-compliance with the ADA.

77.     Mr. Wright has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees, costs and litigation expenses from Defendants pursuant to 42 U.S.C. § 12205.

78.     Mr. Wright is without adequate remedy at law and is suffering irreparable harm.

79.     Pursuant to 42 U.S.C. § 12131, *et seq*., this Court is provided authority to grant Mr. Wright

injunctive relief including an order for Defendants to alter the Property to make those facilities, and/or programs, and/or activities, readily accessible and useable to Mr. Wright and all other persons with disabilities as defined by the ADA.

**COUNT II**
**VIOLATION OF THE REHABILITATION ACT**

80.     Mr. Wright adopts and re-alleges the allegations contained in paragraphs 1-78 as if fully stated herein.

81.     Mr. Wright brings this claim against Defendants, based upon the Rehabilitation Act, 29 U.S.C. §794, *et seq.*

82.     The Rehabilitation Act provides that:

> No otherwise qualified individual with handicaps in the United States, as defined by 7(8) [29 USCS § 706(8)], shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.  29 U.S.C. § 794(a).

83.     Upon information and belief, as set forth herein, Defendants have violated the Rehabilitation Act by intentionally excluding Mr. Wright, solely by reason of his disability, from the participation in, and denying him the benefits of, and have otherwise subjected him to discrimination under, Defendants' programs and activities.

84.     Upon information and belief, a non-exclusive list of Defendants' violations of the Rehabilitation Act and discriminatory conduct against Mr. Wright are evidenced by:

      A.     Denying Mr. Wright access to, and the opportunity to participate in or benefit from, the aids, benefits, activities, programs, accommodations and services offered at the Property;

B.     By otherwise limiting Mr. Wright in the enjoyment of the rights, privileges, advantages and opportunities enjoyed by individuals without disabilities who receive Defendants' aids, benefits and services;

C.     Making facility site or location selections that have the effect of discriminating against individuals with disabilities and excluding them from and denying them the benefits of, and defeating or substantially impairing the accomplishment of the objectives of, the services, programs and activities offered by Defendants at the Property;

D.     Failing to administer services, programs and activities in the most integrated setting appropriate to the needs of Mr. Wright;

E.     Excluding Mr. Wright from participation in, and the benefits of, Defendants' services, programs and activities as a result of Defendants' Property being inaccessible to or unusable by Mr. Wright; and

F.     Failing to design and/or construct new facilities, or make alterations to existing facilities, which are readily accessible to and useable by individuals with disabilities.

85.    Upon information and belief, there are additional, ongoing violations of the Rehabilitation Act at the Property which Mr. Wright is more likely than not going to encounter upon his future visits to the subject premises.  Mr. Wright brings this action:

A.     To redress injuries suffered as a result of Defendants' discriminatory actions and inactions set forth herein;

B.     To reasonably avoid further and future injury to Mr. Wright as a result of

Defendants' ongoing failure to cease their discriminatory practices as set forth in this action, including correcting violations of the Act;

C.   To ensure Defendants' Property is accessible as required by the relevant applications of Title II of the ADA;

D.   To be made whole and ensure future compliance; and

E.   To reasonably avoid future ADA and Rehabilitation Act litigation involving the same Property and under the same laws as set forth herein with its concomitant impact on otherwise scarce judicial resources.

86.   Only through a complete inspection of the Property and related facilities, undertaken by Mr. Wright and/or his representatives, can all said violations be identified and cured so as to ensure access for people with mobility-related disabilities, the primary purpose of this action.

87.   Upon information and belief, Defendants are the recipient of federal funds.

88.   Upon information and belief, as the recipient of federal funds, Defendants are liable for damages to Mr. Wright as a result of their acts and omissions constituting intentional discrimination.

89.   As set forth above, Mr. Wright has been denied access to, and without the relief requested herein will continue to be denied access to the goods, services, programs, facilities, activities and accommodations offered by Defendants solely by reason of his disability, and has otherwise been discriminated against and damaged solely by reason of his disability as a result of Defendants' Rehabilitation Act violations set forth above.

90.   Mr. Wright has been obligated to retain undersigned counsel for the filing and prosecution of this action, and undersigned counsel is incurring reasonable attorneys' fees, including costs and

litigation expenses. Mr. Wright is entitled to recover those attorneys' fees, costs and litigation expenses from Defendants pursuant to 29 U.S.C. §794(b).

91.     Pursuant to 29 U.S.C. §794(a) this Court is provided authority to grant Mr. Wright injunctive relief including an order to alter the subject premises, facilities, services, activities, programs and accommodations to make them accessible to and useable by individuals with disabilities to the extent required by the Rehabilitation Act; closing all premises and facilities and discontinuing all non-complying services, activities, programs and accommodations until the requisite modifications are completed; and, granting Mr. Wright compensatory damages for Defendants' discriminatory actions.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Wright prays that:

A.     This Court issue a Declaratory Judgment that determines that Defendants are in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*;

B.     This Court issue a Declaratory Judgment that determines that the property, programs and activities owned, operated and administered by Defendants are in violation of the Rehabilitation Act;

C.     This Court grant permanent injunctive relief against Defendants including an Order to make all necessary alterations to the Property to make such Property readily accessible to and usable by individuals with disabilities to the extent required  by the ADA; and to require Defendants  to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to

afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services;

D.     This Court enter an Order directing Defendants to alter and modify the Property and its facilities, services, activities, programs and accommodations as appropriate to comply with the ADA and the Rehabilitation Act;

E.     This Court award Mr. Wright monetary damages (including nominal damages) pursuant to ADA and/or Rehabilitation Act for the harmed caused by Defendants' discriminatory practices;

F.     This Court award Mr. Wright reasonable attorneys' fees, costs and litigation expenses pursuant to 29 U.S.C. § 794a(a)2 and 42 U.S.C. § 12205 and 28 C.F.R. § 35.175; and

G.     Such other relief as the Court deems just and proper, and/or is allowable under Title II of the ADA and the Rehabilitation Act.

**BIZER & DeREUS, LLC**
*Attorneys for Plaintiff*

/s/ Andrew D. Bizer
ANDREW D. BIZER (LA # 30396)
GARRET S. DeREUS (LA # 35105)
EMILY A. WESTERMEIER (LA # 36294)
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996
Email: andrew@bizerlaw.com

gdereus@bizerlaw.com
ewest@bizerlaw.com